The case is In Re Tam, 2014-1203. Mr. Miller, please call me. Good morning. Good morning, Your Honors. Please be quiet. Thank you. This is a case that involves... It has constitutional implications. It involves issues of intellectual property, but it has much more to do with administrative law, with norms of administrative law, and questions of whether or not an administrative legal decision may be made without proper application of... Isn't it simply a question of whether the TTAB had substantial evidence for its conclusions? Yes, it really is. And we believe that the record is very clear that it didn't. And the office actions and the response to office actions on examination make it very clear that the applicant, as much as invited the examining attorney to specify what sort of evidence the examining attorney would need to consider the application before him, the actual application under consideration, in order to make a determination with respect to the use of the mark at that time and the meaning of the mark, not with respect to dictionary definitions that were cherry-picked, not with respect to obscure reference works with dates from the 1970s, but, again, looking for evidence, contemporaneous evidence, with respect to the use of the mark, with respect to the meaning of the mark, and certainly with respect to the substantial composite of the targeted group, which is... But it's not the examiner's obligation to tell the applicant how to rebut a prima facie case, is it? No, but it is the examiner's obligation to make a prima facie case on a two-way rejection, and he didn't make the slightest attempt to do so. All he did was cut and paste from a previous application, which was not before him. The prima facie case was... But the current application did purport to date back to uses that go all the way back to 2006, correct? Only for purposes of the first date of use, but the evidence of use, in other words, the use of the mark, the two-way rejection must be premised on evidence. The evidence of the two-way rejection must be based on contemporaneous use. There was no evidence of contemporaneous use. There was evidence of use based on other historical information. If an applicant makes a previous application and there is evidence in the record that that application... that that applicant has in the past made what is deemed under the standards of the PTO to be improper use under Section 2A, it is entirely plausible that that applicant might learn a lesson, might say, we see here that the PTO will not issue a registration because our use is improper. Let's mend our ways. Let's use it in a content-neutral way. Whereas here, you have a mark which is not inherently disparaging. There are certain words that can never be redeemed because they have no place in the English language for purposes of Section 2A. But a word like slants, which does have a place, can be redeemed. So my obligation as an applicant is merely to give the neutral, clean application. And then, if the examining attorney believes there is a problem, to find contemporaneous evidence of that problem or to request from the applicant, given your history, what can you show me? Or to go on the Internet afresh and say, I've gone to your website and I see a problem. None of that happened. Instead, what we have was, oh, you're the guy from last time. And the problem with that is, there's no limit to it. He bears the mark for the rest of the time. Maybe he would have learned a lesson. Why didn't the applicant learn the lesson that it might be useful to bring in information to show, as he argues, that this is a generational issue and that a substantial cross-section of the affected population really isn't offended by this? Nothing he could have shown could have rebutted what... In other words, he showed prima facie evidence. He submitted specimens that were not Asian-related. First of all, we know. The TCAB is very clear on this. The argument of reclaiming or reappropriating an ethnic identity, words that have been deemed to be offensive but which an ethnic group now wants to reappropriate have been rejected consistently by the TTAB. So an ethnic group wishing to take that approach with the TTAB may choose to die on that hill, but it's going to be a death in all probability. Isn't that the heart of your First Amendment argument, though? That unlike even, say, the Redskins case, where the First Amendment argument is at issue, your trademark registrant really sought to use this very much as a form of speech. He wasn't just choosing the word slant because it's a catchy tune. He was choosing the word slant in part to reclaim the word, in part to raise awareness and or use it as a form of speech. That was the argument of my client in the registration application that is not on appeal. The only First Amendment argument in our submission is that to the extent that the PTOs and the TTAB, to be fair, the TTAB decision skirts the issue, but to the extent that the PTO decision, that the office actions make any reference whatsoever to the ethnic identity of the applicant himself, that that is entirely improper. And it doesn't do so. We don't want to push that too hard. We don't think that it's necessary to address that issue, to address the far more obvious issue that the evidentiary standards were not met here. But I thought that that point went to your equal protection argument, not your First Amendment argument. Well, the First Amendment argument is the broader argument that an applicant in this situation is really at sea in understanding what on earth he's supposed to do. Looking at the statute and looking at the precedents and looking at the registrations that are in the Federal Register, he really has very little guidance in the year 2014 to understand what is and what is not permitted. If he wished to take the re-appropriation tact, he certainly is able to do so if he wants to re-appropriate slurs that refer to sexual orientation. If, however, he wishes to re-appropriate slurs that have to do with ethnic identity, that's clearly a no-no. Why that should be the case, clearly nothing in Section 2A guides us, clearly no jurisprudence from this Court guides us, and no jurisprudence from the DTAB guides us. Well, that goes to your void preventiveness argument. Yes. Or, to some extent, to your arbitrary and capricious argument. So now I'm totally confused. Do you have a First Amendment argument? There is a fundamental, yes. One never likes to go... My fundamental argument is an administrative law argument. Do I have a First Amendment argument? Yes. The First Amendment issue was settled in McGinley. Isn't that correct in that finding on us? It was. It was. That's aside from the fact that the failure to be able to register does not affect anyone's free speech. In fact, if anything, it enables more speech because one could use this unregisterable mark. I would think you wouldn't agree with that. I'm just going to help you out a little bit. I would. Just say no. I would agree with it. I would agree with it, and that is... Do you agree with what he just said? I would agree that this Court has every opportunity to make the First Amendment point, to adopt my First Amendment argument in my briefing. I'm not asking the Court to go against Supreme Court precedent, but I do believe that this Court has the opportunity to revisit its own precedent with respect to the... You mean to go and back? If necessary, of course. If the Court's compelled, considering the First Amendment is a pretty important one. That's why it's number one. Well, I'm not so sure about that, but I think they're all pretty important, but I still am having a hard time just grasping what your First Amendment argument is. So why don't you articulate it for us? There is no question that an applicant... that a person wishing to express himself through the use of speech, and through the use of a trademark... A trademark is a component of speech. There's no... The nexus between trademark speech... Trademark as a component of speech has been recognized by the Court. Its limitation as commercial speech or non-commercial speech is an established part of jurisprudence as well. Government's ability to limit that speech has also, in many contexts, been acknowledged. Trademark registration is a privilege, but there's a point at which when government acts in selecting which kind of speech will be approved, it acts as a censor. It acts as a censor. There was a time when there was... Isn't there a difference, though, between prohibiting speech, on the one hand, which very much would be a censorship, and refusing to give one a monopoly on a particular mechanism for that speech? Yes, but we're not talking about a monopoly on a mechanism for speech. We're talking about a trademark registration, which is... Well, a trademark does provide you with, effectively, a monopoly of that form. Right, but let's consider now what the criterion is that we're utilizing to use Your Honor's formulation, limiting a sort of monopoly on speech. Obscene, scandalous, offensive. These are terms that in almost any other area of law, we would acknowledge the government has virtually no business exercising control. It is, in the year 2014, considering the range of topics that government considers itself unfit to make decisions for the population in general. We would never engage. Mr. Coleman, you're into your rebuttal time. You wanted to say something? I will save it. Thank you. All right. Ms. Telford. Good morning. May it please the Court, the two-part test for disparagement requires determining first what the likely meaning of the mark is in the context in which it's used. And second, in that context, is it disparaging to the reference group? And I wanted to pick up on the point of, to start with the context in which it's used, because Mr. Tam is arguing that he submitted specimens in this application that are different from the specimens he had submitted earlier, but the Board is required to look at the context in which the mark is used, not just the specimens that the applicant submits as they're convenient to his purposes. So in this case, the examining attorney and the Board looked at the applicant's website and statements that he has made in the public about the way he intends to use the mark. On the second part of the test, substantial evidence shows that the word slants when referring to people of Asian descent is disparaging. Isn't there a little bit of a concern that the actual way that the search was done for purposes of seeing how the word was used sort of invited the response? Well, to the extent there's any concern, Mr. Tam hasn't submitted any evidence to show that a different meaning is the likely meaning here. The only evidence in the record here is that the dictionary definitions uniformly, in the definitions that are referring to people at all, discuss those definitions as disparaging or offensive. So even if there was a problem with the examiner's search terms, there's just no evidence to the contrary in this case. And on top of that, it may have been inelegant, but the examiner's intent to find the definitions that are referring to people, to weed out the definitions that are clearly inapplicable in this case, he had to have some way to do that. But I mean, once you put slant in the context of other hate words, you're going to come up with a response that discusses slant in the context of hate words. That's right, because there is a definition that is a hate word. And in this case, the examining attorney had to pick a likely meaning, and in picking a likely meaning, he looked to the evidence of the use in the marketplace here, which shows that the applicant intended to use the mark, to use it for the meaning that is referring to people of Asian descent. What about the First Amendment point here that your opponent makes, that the government is suppressing speech? Well, there's no speech that is suppressed or prescribed by the registering or refusing to register a mark. And that's what this court has decided repeatedly. No, we decided it in 1981 in the three cases, 1981 McGinley, and the three cases since then simply say McGinley is our rule. None of them reanalyze the issue at all. Right, but it has been... We decided it in two sentences, and I don't know if you happen to hold Greece in that case, but it was a relatively minor and unexplored point. In McGinley? In McGinley, it discusses pretty significantly the extent of the benefits that are accruing to a trademark registrant, and explains that they're more procedural than substantive. And then also discusses the fact that there is no speech prescribed. What about the unconstitutional conditions doctrine, which I'm sure you're familiar with, and quite clearly limits government's ability to place limits upon benefits that you could otherwise receive on the basis of relinquishment or impingement on First Amendment rights? Well, this court has decided this issue to start with,  I've been in that argument, and you don't have to make it again. I totally get your argument, and I have no issues with that argument. I'm going now to whether there is merit to the argument to the contrary, such that we should take it in bank and reconsider the two sentences in McGinley, issued 35 years ago, and possibly analyze them under what has been an immense evolution of Supreme Court jurisprudence on this point. So you may not be prepared to discuss with me, and you can say so, and I will let you sit down without further question. If you are completely unprepared to discuss with me the evolution of that Supreme Court doctrine, I'll let you off the hook. But if you're open and game for it, because it would help me decide whether I think there's a need to take this case in bank, I'd love to hear your thoughts on it. I will accept the invitation to hold off, and if the court wants to take the case in bank, it can. But as a panel, it's bound by the precedent of this court. Most people come prepared to discuss the underlying issue nonetheless. You're not willing to engage in that discussion? That's right. I would like to rest on my briefs on the evolution of the Supreme Court authority in this area. Can I just ask one question? Do you think that a trademark is actually speech or is it more like expressive conduct? Well, the analysis in McGinley, while terse, explains that no speech is prescribed by the refusal to register a mark. So there are still common law rights in the trademark to enforce it, and there's certainly still the ability to use the mark anywhere an applicant would like. And so, to that extent, the refusal to register the mark under this court's precedent is not prescribing any speech. Why do you think the Lanham Act enacted Section 2A? Section 2A is, as far as I can tell, designed to avoid the government having to endorse marks. Are you familiar with the legislative history on 2A? Somewhat. In the legislative history hearings, aren't the only discussions that we don't want people to use marks like this? And don't they expressly say, so by forbidding them registrability, they won't use those marks? I don't see any discussion ever of government imprimatur or government funding or otherwise in the legislative history, but I see quite clearly statements that suggest they don't want those marks to be used. But this court's analysis of 2A has found that the effect is primarily procedural, first of all. I don't understand, what does that mean, primarily procedural? So the benefits of registration include certain presumptions that you get in... They also give you access to a federal forum, which you wouldn't otherwise have, right? That may be true. Well, it is true. And they also give you the ability to actually bar importation at customs, which you absolutely would not have by common law, right? Correct. That's right. So it's giving you lots of additional substantive rights you don't have otherwise, isn't it? Well, what the court explained is... Is that a substantive right that you do not have otherwise? It's a procedural right, as McGinley viewed it, as the CCPA viewed it. How in the world is the ability to bar importation at customs, which you do not have under common law, not a substantive right? The court said that... They said they are more procedural than substantive, is what the court said on the issue. Are you familiar with the Ninth Circuit's Bullfrog case or the Fifth Circuit's Bingo case, both of which seem almost directly analogous to this one? To the extent that the Fifth Circuit has addressed this issue... In the Bingo case, yeah. Well, to the extent the Fifth Circuit has addressed the issue of trademark registration and has agreed with the Federal Circuit and the CCPA that Section 2A is constitutional. And on the benefits point, I just wanted to... Are you familiar with the Bullfrog case in the Ninth Circuit? I'm not. It's a case about extending benefits to films that are solely films if they are educational in nature and it was struck down by the Ninth Circuit. It didn't stop you from ever making these films, selling these films or doing anything you wanted. It just prohibited you from paying certain import duties or extending certain benefits otherwise. And the Ninth Circuit struck that down and said that's unconstitutional. Why isn't that analogous to the trademark case? Well, we've cited some Supreme Court cases on the government on the benefits issue which held that the government is allowed to... And in every single one of those, it is only because the benefit at issue fell under the spending clause of the United States Constitution which allowed for the government to condition benefits in the interest of general welfare. Is the Lanham Act under the federal spending power of the U.S. Constitution? I would point again to McGinley's analysis of benefits... No, but I didn't ask you about McGinley's analysis of benefits. I asked you if the Lanham Act is a statute that was enacted by Congress pursuant to its spending power under the spending clause of the United States Constitution. I'm not sure, Your Honor. Do you know what provision of the Constitution the Lanham Act was enacted under? I don't. But on the benefits issue, McGinley explained the government resources that are going into the registration of a mark including the responsibilities... once the registration is granted. The benefits of registration, in part with government assistance, include public notice of the mark in an official government publication and in official records which are distributed throughout the world, maintenance of permanent public records concerning the mark, availability of the customs service for blocking importation of infringing goods, access to federal courts where there's a presumption of validity of the registration, notices to the registrant concerning maintenance of the registration, and to some extent, direct government protection of the mark in that the PTO searches its records and refuses registrations to others of conflicting marks. And that was all to show the benefits that the government is using its resources to provide to registrants. Which resources are they using? Well, those are the resources that... Aren't permanent trademarks fully privately funded by the application fees? Not always. At certain times they are, and at certain times they are not. And so... But on top of that, as McGinley explained, there are numerous other resources going into the... You mean like when the government has to be involved in enforcement efforts, like the courts? That's right. Okay, so when the government licenses somebody or regulates or issues a zoning regulation or anything else of that nature, none of which have anything to do with spending by and large, aren't the government courts nonetheless implicated in lawsuits involving whether or not someone is correctly licensed, breaching their license, like a medical license, for example? Yes. So there would be government lawsuits in all of those cases, but that doesn't suddenly morph it into a spending power case, does it? No, not necessarily. But I was simply trying to point the court to the analysis in McGinley of the benefits that the government is providing. Before you sit down, I want to ask you a question about the argument that the way the Lanham Act is analyzed is arbitrary and capricious because individual examiners, you know, everything is in the eye of the beholder. Individual examiners get to say what they think is scandalous or what they think might offend someone, and they can do things like maybe manipulate their searches for purposes of making their prima facie case. Is that the kind of argument that could be made in the context of this appeal, or does it have to be made under the APS? I think that kind of argument could be made in this appeal. I don't think that argument has much sway because, well, for one thing, there's a very clear test for how to determine if a mark is disparaging, which involves finding evidence of the likely meaning in context and then finding whether that likely meaning is disparaging to the reference group. And each case does depend on the evidence in that case. And so, for example, Mr. Tam refers to a number of marks, including one, Dykes with Bikes, that was registered. And in that case, in fact, there were hundreds of pages of rebuttal evidence that the applicant came forth with saying that the meaning had changed since the time that the examining attorney's evidence came from. And so that mark was then registered, even though it had initially been subject to a refusal on the same basis. So would you agree that it's not good enough to just say, well, just because we might have made a mistake somewhere else, that that doesn't help you here? The better argument, actually, is that you have to look at the analysis that was made somewhere else and that if the facts are different, then the results could be different. But that doesn't mean that the test isn't clear enough for an examiner to follow. That's exactly right. Okay, because some of the cases that you cite seem to just say, just because we may have screwed up somewhere else, or the PTO may have screwed up somewhere else, doesn't mean that that matters. Right, some of the cases do mention that. But I think you're right that the stronger argument is that they are all decided on their own facts. And also, to the extent any party thinks that the right evidence wasn't brought forth in a proceeding and a mark should not have been registered, there's also the cancellation proceeding available to them to cancel a mark that shouldn't have been registered. Right, but that sort of goes the other way, which is that you generally favor the applicant. That's right. With respect to the evidence, and I think that your Dykes v. Bikes example is a good one, because in that particular case, there was substantial evidence that showed that it was a generational thing. The argument here is that this is a generational thing, but there was no evidence offered by the applicant to that effect, other than his own statements, right? That's right, that's right. And he certainly could have come forth with evidence that the likely meaning to a substantial composite of the reference group had changed. Thank you, Ms. Silfen. Mr. Coleman has a couple of minutes of rebuttal time. Thank you. I have three minutes and three points. One on the one we just made, the generational point and Dykes v. Bikes. In that case, the generational case, the applicant was responding to evidence. Here, the examining attorney didn't bother to present any evidence. He just asserted, he just made an assertion based on another application, and that's why there was nothing to rebut. The burden was on the examining attorney, and it wasn't met, there was nothing to rebut. But wasn't there evidence that the very use of this bad name in the context that the mark was designed to be used in had resulted in substantial controversy, had resulted in this individual, your client, being pulled from the podium in a particular youth program for Asian Americans? There was evidence from another application that, again, if that same web search had been done anew for this examination, would have perhaps demonstrated that subsequent public commentary had been to the exact contrary. So we're supposed to assume that if today someone expresses serious concern about the name of a mark, but you file your, or the name that's been used, and you file it tomorrow, that we're not allowed to look at what someone said today? No, everything in the past is relevant, but it is never determinative. The examining attorney should always at least do a fresh search, at the very least, and that wasn't done here. If I may just quickly use my remaining minute, the Trademark Law Revision Act of 1988, which is post-McGinley, completely changes the substantive meaning and rights inherent in trademark rights. That's what Judge Moore was, I think, getting at. It is a substantive right. It is not merely a procedural right, and that's why McGinley cannot merely be waived out and relied on as the end of the discussion. Trademark rights do have a direct relation to speech. It's addressed in both of our briefs. And finally, the PTO repeatedly refers to people. You can't talk about references to people whenever you talk about slants and people. Rock bands don't always refer to people. Many rock bands, Black Flag, Social Distortion, I know that I am dating myself, Tears for Fears, Counting Crows, Verve Pipe, Frankie Goes to Hollywood, the slants did not have to mean the name of the group. It could have referred to a concept. The examining attorney did not demonstrate the evidence to the contrary. That's why he didn't meet the burden to reject this registration. Thank you, Mr. Coleman. We'll take the case under advisement. Thank you, Your Honor. All rise. The court is adjourned for the day.